JDN

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kirk Poeppe, | No. CV-18-01828-PHX-JJT (DMF) |
| Plaintiff, | |
| v. | **ORDER** |
| Corizon Health Services LLC, et al., | |
| Defendants. | |

Plaintiff Kirk Poeppe, who is currently confined in the Arizona State Prison Complex-Lewis in Buckeye, Arizona, filed this pro se civil rights Complaint under 42 U.S.C. § 1983 against Corizon Health Services LLC (Corizon) and three Corizon employees: Nurse Practitioners (NP) Lawrence Ende and Jane Frances Ndemanu, and Nurse Mia Myers. (Doc. 1.) Before the Court is Plaintiff's Motion for Preliminary Injunction. (Doc. 35.) The Court will grant Plaintiff's Motion.

**I.  Background**

Plaintiff initiated this action in June 2018. (Doc. 1.) In his Complaint, he set forth Eighth Amendment medical care claims against Defendants based on their alleged failure to provide constitutionally adequate medical treatment for Plaintiff's hydrocele (Count One) and Parkinson's disease (Count Two). (*Id.*) Also in June 2018, Plaintiff moved for a preliminary injunction; he sought an order directing Defendants to have his hydrocele surgically repaired and to send him to a specialist to treat his Parkinson's disease. (Doc. 2.) Corizon submitted evidence showing that in July 2018, Plaintiff had a scrotal

ultrasound, which revealed a "moderate left hydrocele" and "testicular findings within normal limits." (Doc. 19 at 18, Defs.' Ex. D.) At that time, Corizon indicated that it was in the process of obtaining Plaintiff's prior ultrasound records for comparison to ascertain whether Plaintiff's hydrocele had increased in size and required surgical intervention. (*Id.* at 2.)

The evidence also showed that in July 2018, Plaintiff saw neurologist Dr. Nirmala Aryal to evaluate the status of his Parkinson's disease. (*Id.* at 6–9, Defs.' Ex. A.) Dr. Aryal recommended that Plaintiff undergo electromyography and nerve condition studies of his upper and lower extremities, take Neurontin (Gabapentin) daily, and remain on Carbidopa/Levodopa. (*Id.* at 8–9.) Plaintiff had the recommended studies performed in August 2018, after which Dr. Aryal diagnosed Plaintiff with "sensory motor neuropathy bilateral." (*Id.* at 12–13, Defs.' Ex. B.) Corizon indicated that it was scheduling Plaintiff for a return visit to the neurologist for a follow-up care. (*Id.* at 2.)

In light of evidence showing treatment for Plaintiff's hydrocele and Parkinson's disease and that follow-up measures were being scheduled, the Court denied Plaintiff's request for injunctive relief without prejudice to refiling if the follow-up care was not provided. (Doc. 30.)

On March 14, 2019, Plaintiff filed his pending Motion for Preliminary Injunction. (Doc. 35.) He states that the neurologist issued a treatment plan, which included an MRI; however, Defendants have refused to provide the recommended treatment. (*Id.*) Plaintiff asserts that, as a result, he is suffering continued severe pain on the right side of his body. (*Id.*) He seeks an order directing Defendants to follow the treatment plan as recommended by the neurologist and provide an MRI. (*Id.*)

**II.   Preliminary Injunction Standard**

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)); *see also Winter v. Natural Res. Def. Council, Inc.*, 555

1  U.S. 7, 24 (2008) (citation omitted) ("[a] preliminary injunction is an extraordinary remedy
2  never awarded as of right").  A plaintiff seeking a preliminary injunction must show that
3  (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm without
4  an injunction, (3) the balance of equities tips in his favor, and (4) an injunction is in the
5  public interest.  *Winter*, 555 U.S. at 20.  "But if a plaintiff can only show that there are
6  'serious questions going to the merits'—a lesser showing than likelihood of success on the
7  merits—then a preliminary injunction may still issue if the 'balance of hardships tips
8  sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied."  *Shell*
9  *Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance*
10  *for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).  Under this "serious
11  questions" version of the sliding-scale test, the elements of the preliminary injunction test
12  are balanced, so that a stronger showing of one element may offset a weaker showing of
13  another.  *See Alliance for the Wild Rockies*, 632 F.3d at 1135.

14  Regardless of which standard applies, the movant "has the burden of proof on each
15  element of the test."  *See Envtl. Council of Sacramento v. Slater,* 184 F. Supp. 2d 1016,
16  1027 (E.D. Cal. 2000).  Further, there is a heightened burden where a plaintiff seeks a
17  mandatory preliminary injunction, which should not be granted "unless the facts and law
18  clearly favor the plaintiff."  *Comm. of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1441
19  (9th Cir. 1986) (citation omitted).

20  The Prison Litigation Reform Act (PLRA) imposes additional requirements on
21  prisoner litigants who seek preliminary injunctive relief against prison officials and
22  requires that any injunctive relief be narrowly drawn and the least intrusive means
23  necessary to correct the harm.  18 U.S.C. § 3626(a)(2); *see Gilmore v. People of the State*
24  *of Cal.*, 220 F.3d 987, 999 (9th Cir. 2000).

25  "The urgency of obtaining a preliminary injunction necessitates a prompt
26  determination" and makes it difficult for a party to procure supporting evidence in a form
27  that would be admissible at trial.  *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th
28  Cir. 1984).  As a result, "a preliminary injunction is customarily granted on the basis of

procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). In its determination on a motion for a preliminary injunction, "a court may properly consider evidence that would otherwise be inadmissible at trial." *Cherokee Inc. v. Wilson Sporting Goods Co.*, No. CV 15-04023 BRO (Ex), 2015 WL 3930041, at *3 (C.D. Cal. June 25, 2015); *see Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009) (district court did not abuse its discretion by considering "unverified client complaints" and the plaintiff's counsel's interested declaration when it granted a preliminary injunction); *Flynt Distrib. Co.*, 734 F.2d at 1394 (the district court has discretion to rely on hearsay statements when deciding whether to issue a preliminary injunction). A court may also consider evidence or developments that postdate the pleadings. *Farmer v. Brennan*, 511 U.S. 825, 846 (1994).

When evaluating the merits of a preliminary injunction motion, a court's factual findings and legal conclusions are not binding at trial on the merits. *Camenisch*, 451 U.S. at 395.

**III.     Relevant Facts**

On December 12, 2018, Plaintiff saw the neurologist Dr. Aryal for a follow-up visit. (Doc. 39 at 31.) Dr. Aryal took Plaintiff's history, performed an examination, and reviewed all reports from Plaintiff's previous neurologist and the prison. (*Id.* at 31–32.) Dr. Aryal assessed Parkinson disease (primary), idiopathic peripheral neuropathy, low back pain, and right ankle swelling. (*Id.* at 32.) She ordered the following treatment: (1) continue carbidopa/levodopa 25/250 four times a day; (2) start Cymbalta 30 mg once a day in the morning; (3) start Neurontin 600 mg twice a day; (4) an MRI of the lumbar spine; and (5) an x-ray of the right ankle. (*Id.* at 32–33.) Dr. Aryal also noted that Plaintiff was to follow-up in three months. (*Id.* at 33.)

On January 2, 2019, Plaintiff was seen in the medical unit by NP Marie DeMello to discuss an ATP, or alternative treatment plan. (*Id.* at 36.) The medical note documents the following:

> ATP per S. Stacy

>ATP: MRI for generalized, nonspecific low back pain is typically not medically necessary. Consider management based on clinical exam findings.

(*Id.*) NP DeMello examined Plaintiff and assessed lumbar spine pain and pain in the right ankle and joints of the right foot. (*Id.* at 36–38.) DeMello documented a treatment plan to include "HEP" lumbar spine, which appears to refer to home exercise plan. (*Id.* at 39–40.) DeMello's treatment plan also included capsasin ointment, continue with current medications, and "symptomatic treatment, may continued treatment at home," and she advised Plaintiff to call his correctional officer or go to medical if his symptoms worsen. (*Id.* at 40.) The medical note shows that Plaintiff was prescribed carbidopa/levodopa 25/250 one tablet; however, the frequency is not indicated (i.e., once a day, four times a day, etc.). (*id.*) Plaintiff was also prescribed Duloxetine (Cymbalta) 30 mg once every morning, and Gabapentin (Neurontin) 600 mg 1 table twice daily. (*Id.*)

On March 19, 2019, a Health Service Request form was entered by Nurse Linda Murry in response to a Health Needs Request form submitted by Plaintiff. (*Id.* at 43.) This form documents Plaintiff's report that his foot is numb and turning outward and that he is in severe pain from hip to ankle. (*Id.*) The form shows that an appointment with a nurse was scheduled for March 20, 2019. (*Id.*)[1]

On March 25, 2019, an Offender Appointment form was entered by NP DeMello. (*Id.* at 45.) This form does not reflect that there was any appointment this date, only that there was a "provider review," and that an appointment for the "NP Line" at the Health Unit was approved. (*Id.*) The "Comments" section on this form states "foot numb and turning out, no MRI or appt. for neurology." (*Id.*)

. . . .

. . . .

**IV.    Discussion**

    **A.    Defendants' Response**

---

[1] Defendants assert that after Plaintiff filed the Health Needs Request form, he saw NP DeMello on March 26, 2019, and that NP DeMello documented a thorough examination of his spine. (Doc. at 2–3.) But there is no attached medical record or other evidence documenting a March 26, 2019 appointment or examination.

- 5 -

In their Response to Plaintiff's Motion, Defendants contend that an analysis of the four-prong *Winter* test is unnecessary because "appropriate relief is in progress." (Doc. at 5.) Defendants state that Plaintiff currently has a pending lumbar spine MRI consult request and "it is anticipated that the consult will be approved and scheduled, thus extinguishing any need for a court Order." (*Id.*)

But the medical records submitted with Defendants' Response do not show that there is a pending lumbar spine MRI consult request. Notably, in briefing on Plaintiff's prior request for injunctive relief, the proffered medical records included Consultation Request forms that documented consultation requests for a scrotal ultrasound and neurology appointment. (Doc. 10, Exs. C & E (Doc. 10 at 13, 18).) There is no such Consultation Request form for a lumbar spine MRI submitted with Defendants' current Response. Nor is there any other medical record or sworn statement indicating that there has been a consult request made for an MRI. To support their assertion that there is a pending request, Defendants point to their attached Exhibit G, but this form simply documents approval for an appointment on the "NP line" at the Health Unit. (Doc. 39 at 3, ref. Ex. G.) There is nothing on the face of this form to suggest that there is or has been any request submitted for a lumbar spine MRI. (*Id.* at 45.)

In short, there is no evidence that a consult request for a lumbar spine MRI has been approved or even submitted. Defense counsel's assertions that a consult request has been made and is anticipated to be approved and scheduled are not evidence and are not considered by the Court. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 923 (9th Cir. 2001) ("arguments of counsel, however, are not evidence") (internal quotation marks and citation omitted); *Single Chip Systems Corp. v. Intermec IP Corp.*, 495 F. Supp. 2d 1052, 1062 (S.D. Cal. 2007) ("attorney arguments cannot be offered as evidence in any proceeding, and therefore this Court cannot consider factual evidence that [is] only proffered by counsel"). Accordingly, Defendants fail to show that appropriate relief has been provided or is in progress.[2]

---

[2] The Court notes that Plaintiff did not file a reply memorandum. But in this case,

B.      *Winter* **Elements**

   1.      **Likelihood of Success on the Merits**

Plaintiff argues that he satisfies the *Winter* elements and is entitled to an injunction. (Doc. 35.) To establish a likelihood of success on the merits of an Eighth Amendment medical care claim, a prisoner must demonstrate "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The prisoner must show (1) that his condition constitutes a "serious medical need" and (2) that the defendant's response to that need was deliberately indifferent. *Jett*, 439 F.3d at 1096.

The medical records show that Plaintiff has been diagnosed with Parkinson's disease for which he has received medications and specialist treatment; thus, he has established that his condition constitutes a serious medical need. *See McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992) (examples of indications that a prisoner has a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain), *overruled on other grounds, WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997).

Deliberate indifference may be established where a prisoner shows that doctors chose a course of treatment that was "medically unacceptable under the circumstances" and "that they chose this course in conscious disregard of an excessive risk to [the prisoner's] health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *see Jett*, 439 F.3d at 1097–98 (jury could find deliberate indifference where the prison doctor was aware that the plaintiff needed to see an orthopedist for treatment and the plaintiff was not taken to the orthopedist for 6 months). The Ninth Circuit has held that failure to follow a

---

the Court does not consider defense counsel's unsupported assertions, and—as set forth herein—Defendants did not refute Plaintiff's arguments in support of his Motion, and Defendants' proffered evidence supports Plaintiff's deliberate indifference claim and request for relief. Absent any legal argument to respond to or evidence to challenge, there was no need to file a reply.

- 7 -

specialist's recommendation may amount to a course of treatment that is medically unacceptable. *See Colwell v. Bannister*, 763 F.3d 1060, 1069 (9th Cir. 2014) (denying summary judgment where prison officials "ignored the recommendations of treating specialists and instead relied on the opinions of non-specialist and non-treating medical officials who made decisions based on an administrative policy"); *Snow v. McDaniel*, 681 F.3d 978, 988 (9th Cir. 2012) (where the treating physician and specialist recommended surgery, a reasonable jury could conclude that it was medically unacceptable for the non-treating, non-specialist physicians to deny recommendations for surgery), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014); *Jones v. Simek*, 193 F.3d 485, 490 (7th Cir. 1999) (the defendant physician's refusal to follow the advice of treating specialists could constitute deliberate indifference to serious medical needs); *McNearney v. Wash. Dep't of Corrs.*, C11-5930 RBL/KLS, 2012 WL 3545267, at *26 (W.D. Wash. June 15, 2012) (in granting a preliminary injunction for specialist treatment, the district court found that the prisoner plaintiff showed a likelihood of success on the merits of her Eighth Amendment claim where the defendants failed to follow an orthopedic surgeon's strong recommendation for further orthopedic evaluation). In addition, a failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989) ("access to medical staff is meaningless unless that staff is competent and can render competent care"); *see Estelle*, 429 U.S. at 105 & n. 10 (the treatment received by a prisoner can be so bad that the treatment itself manifests deliberate indifference).

According to the medical records proffered by Defendants, after her examination of Plaintiff in December 2018, Dr. Aryal ordered that Plaintiff receive an MRI of the lumbar spine and an x-ray of the right ankle. The records show that Plaintiff has not received an MRI or an x-ray. The only documentation in the record explaining the denial of an MRI is the note that "per S. Stacy," there is an alternative treatment plan because an MRI for generalized low back pain is typically not medically necessary. (Doc. 39 at 36.) "S. Stacy"

is not identified, and there is no indication whether this person is a physician—much less a specialist, nor is there any evidence that S. Stacy performed any type of examination of Plaintiff or review of his medical history and records before overriding the treating specialist's order for an MRI. Further, there is no explanation in the records for failing to perform the x-ray that was ordered by the neurologist. And, finally, although the Dr. Aryal ordered follow-up in three months from the December 12, 2018 appointment, there is no evidence that a follow-up appointment has been scheduled.

In failing to address the *Winter* elements, Defendants do not refute Plaintiff's argument that he is likely to succeed on his deliberate indifference claim. The medical records indicate that Defendants have refused to follow the advice of the treating neurologist and that Plaintiff has suffered, and is currently suffering, pain. This supports a finding of deliberate indifference. *See FTC v. AMG Services, Inc.*, No. 2:12-cv-00536-GMN-VCF, 2016 WL 1275612, at *4 (D. Nev. March 31, 2016) (where the evidence supported the plaintiff's claim and given "the [defendants'] tacit agreement to this claim by failing to refute it," the court found that the plaintiff was likely to succeed on the merits). At the least, there are serious questions whether it is medically unacceptable under the circumstances for Defendants to refuse to provide the specialist's recommended treatment. *See Alliance for the Wild Rockies*, 632 F.3d at 1135 (under the sliding-scale test, a court may issue a preliminary injunction if the plaintiff demonstrates "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff"); *see also Republic of the Phil. v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988) ("[s]erious questions need not promise a certainty of success, nor even present a probability of success, but must involve a fair chance of success on the merits") (internal quotation omitted). Accordingly, Plaintiff satisfies the first element.

### 2. **Irreparable Injury**

The second *Winter* element requires Plaintiff to demonstrate that absent an injunction, he will be exposed to irreparable harm. *Caribbean Marine Servs. Co., Inc. v.*

*Baldrige*, 844 F.2d 668, 674 (9th 1988) (speculative injury is not irreparable injury sufficient for a preliminary injunction); *see Winter*, 555 U.S. at 22. To support a mandatory preliminary injunction for specific medical treatment, a plaintiff must demonstrate ongoing harm or the present threat of irreparable injury, not a past injury. *See Conn. v. Mass.*, 282 U.S. 660, 674 (1931) (an injunction is only appropriate "to prevent existing or presently threatened injuries"); *Caribbean Marine*, 844 F.2d at 674. "[T]here must be a presently existing threat of harm, although injury need not be certain to occur." *Villaneuva v. Sisto*, CIV S-06-2706 LKK EFB P, 2008 WL 4467512, at *3 (E.D. Cal. Oct. 3, 2008) (citing *FDIC v. Garner*, 125 F.3d 1272, 1279-80 (9th Cir. 1997)). Pain can constitute irreparable harm. *See Rodde v. Bonta*, 357 F.3d 988, 999 (9th Cir. 2004) (irreparable harm includes delayed and/or complete lack of necessary treatment, and increased pain); *McNearney*, 2012 WL 3545267, at *14 (finding a likelihood of irreparable injury where the plaintiff's medical condition predated her incarceration and had not worsened, but the evidence showed that she continued to suffer unnecessary pain due to the defendants' inadequate treatment plan); *Von Collin v. Cnty. of Ventura*, 189 F.R.D. 583, 598 (C.D. Cal. 1989) ("Defendants do not argue that pain and suffering is not irreparable harm, nor could they").

In addition, courts have recognized that the deprivation of a constitutional right is itself sufficient to establish irreparable harm. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"); *Nelson v. Nat'l Aeronautics & Space Admin*, 530 F.3d 865, 882 (9th Cir. 2008), *rev'd on other grounds*, 562 U.S. 134 (2011) ("[u]nlike monetary injuries, constitutional violations cannot be adequately remedied through damages and therefore generally constitute irreparable harm"); *Norsworthy v. Beard*, 14-cv-00695-JST, 2015 WL 1500971, at *20 (N.D. Cal. April 2, 2015) (in granting motion for injunction for sex reassignment surgery, stating that "the deprivation of [the prisoner plaintiff's] constitutional rights under the Eighth Amendment is itself sufficient to establish irreparable harm").

In his Motion, Plaintiff asserts that he is suffering acute pain in his hip, ankle, and foot and that he has severe pain in his right leg from hip to foot. (Doc. 35 at 1, 4.) The medical records submitted by Defendants show that in January 2019, medical staff documented that Plaintiff "moves slowly"; he has decreased range of motion in his right ankle; he is unable to flex/extend his foot or wiggle his toes; and he has decreased sensation. (Doc. 39 at 37.) The medical records also show that in March 2019, Plaintiff reported that his foot is numb and turning outward and he is suffering severe pain from his hip to his ankle. (*Id.* at 43.) Despite Plaintiff's worsening symptoms and pain, the MRI, x-ray, and three-month follow-up appointment ordered by the neurologist have not been scheduled. On this record, Plaintiff has sufficiently shown that he has been denied specialist-recommended treatment and his pain has increased, thereby satisfying the second *Winter* element.

### 3. Balance of Hardships

Courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (quotation omitted). The Ninth Circuit has held that the interest in protecting individuals from physical harm outweighs a government entity's monetary costs. *See Harris v. Bd. of Supervisors, L.A. Cnty.*, 366 F.3d 754, 766 (9th Cir. 2004) ("faced with [ ] a conflict between financial concerns and preventable human suffering, [the court has] little difficulty concluding that the balance of hardships tips decidedly in plaintiff's favor") (quotation omitted).

Plaintiff argues that he is suffering absent an injunction far more than prison officials will suffer if his request is granted. (Doc. 35 at 2.) Again, in failing to address the *Winter* elements, Defendants do not refute Plaintiff's argument. The Court has already determined that Plaintiff demonstrates serious questions going to the merits and irreparable injury. The relief Plaintiff requests does not extend beyond what has been specifically recommended by the treating specialist. Thus, Defendants make no showing of any harm if an injunction issues. Conversely, Plaintiff demonstrates that he is currently suffering

serious and worsening pain. In this instance, the balance of hardships tips sharply in Plaintiff's favor.

### 4. Public Interest

"[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quotation omitted). Moreover, "the public has a strong interest in the provision of constitutionally-adequate health care to prisoners." *McNearney*, 2012 WL 3545267, at *16 (quoting *Flynn v. Doyle*, 630 F. Supp. 2d 987, 993 (E.D. Wis. 2009)); *see Farnam v. Walker*, 593 F. Supp. 2d 1000, 1017 (C.D. Ill. 2009) (holding that public had an interest in the maintenance of prisoner's health during the pendency of the lawsuit).

Defendants present no argument as to the public interest element. The Court finds that it is in the public interest to provide specialist recommended treatment and to prevent Plaintiff from suffering ongoing pain. Accordingly, this factor favors a preliminary injunction.

## C. Narrowly Tailored Relief

As stated, the PLRA requires any injunctive relief to be narrowly drawn and the least intrusive means necessary to correct the harm. 18 U.S.C. § 3626(a)(2)). Adhering to the specialist's treatment recommendations is the most narrowly drawn relief necessary to correct the harm identified by Plaintiff. Thus, Plaintiff's request for relief satisfies the requirements of the PLRA.

## D. Bond Requirement

Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Despite this mandatory language, "Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (internal quotation omitted). The district court may dispense with the filing of a bond when it

concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct. *Id.*

Here, Defendants have not requested a bond or submitted any evidence regarding likely damages. It is also difficult to envision how Defendants would incur compensable costs or damages. Accordingly, the Court will waive the bond requirement.

### E. Scope of Injunctive Relief

Plaintiff requested an injunction ordering Defendants to adhere to the treatment plan prescribed by the treating neurologist and, specifically, to provide the specialist-ordered MRI. (Doc. 35 at 3–4.) Plaintiff has satisfied the *Winter* factors, and his request for relief is narrowly drawn; thus, he is entitled to injunctive relief.

Therefore, the Court will order Defendants to provide the treatment ordered by Dr. Aryal in the December 12, 2018 medical record. (*See* Doc. 39 at 32–33.) Specifically, Defendants will be ordered to schedule on an urgent basis an MRI, an ankle x-ray, and a follow-up appointment with Dr. Aryal. The Court recognizes that for security reasons, it is not appropriate for Defendants to divulge the exact date and time of Plaintiff's scheduled appointments. But Defendants will be directed to file a Notice with the Court indicating the week in which Plaintiff's procedures and follow-up appointment are scheduled.

**IT IS ORDERED:**

(1) Plaintiff's Motion for Preliminary Injunction (Doc. 35) is **granted** as follows:

    (a) Defendants must promptly schedule Plaintiff to undergo a lumbar MRI as ordered by Dr. Aryal.

    (b) Defendants must promptly schedule Plaintiff to undergo a right ankle x-ray as ordered by Dr. Aryal.

    (c) Defendants must promptly schedule Plaintiff to see Dr. Aryal for a follow-up appointment.

    (d) Defendants must provide any treatment, procedures, testing, and/or medications recommended or prescribed by Dr. Aryal at the follow-up

appointment.

(e) Within **10 days** from the date of this Order, Defendants must file a Notice with the Court indicating the week in which Plaintiff is scheduled to undergo an MRI and an x-ray and indicating the week in which he is scheduled to see Dr. Aryal.

(2) This relief is narrowly drawn, extends no further than necessary to correct the harm, and is the least intrusive means necessary to correct the harm. *See* 18 U.S.C. § 3626(a)(2).

(3) Plaintiff is not required to post bond.

Dated this 1st day of May, 2019.

Honorable John J. Tuchi
United States District Judge