JDN

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kirk Poeppe,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>Corizon Health Services LLC, *et al.*,<br>　　　　　　　Defendants. | No. CV 18-01828-PHX-JJT (DMF)<br><br>**ORDER** |

Plaintiff Kirk Poeppe, who was formerly in the custody of the Arizona Department of Corrections (ADC), brought this pro se civil rights action against Corizon Health, Inc., and three of its employees—Nurse Practitioners (NPs) Lawrence Ende and Jane Frances Ndemanu, and Nurse Mia Myers—for the denial of adequate medical care in violation of the Eighth Amendment. (Doc. 1.)[1] Plaintiff seeks to hold Defendants in contempt of a Preliminary Injunction Order entered on May 1, 2019. (Doc. 65 at 3.) The Court issued an Order to Show Cause directing Defendants to show cause why a contempt hearing should not be held and why Defendants should not be found in contempt and sanctioned for violation of the Court's prior Order. (Doc. 95 at 7–10, 15.) The Corizon Defendants filed their Response to the Order to Show Cause, and Defendant ADC Director Ryan filed a separate Response. (Docs. 100, 105.) The Court will set a show cause hearing.

---

[1] In its July 2, 2019 Order, the Court joined ADC Director Charles Ryan as a Defendant in his official capacity for the purposes of injunctive relief. (Doc. 64.)

## I. Background Summary

Plaintiff initiated this action in June 2018, and—as relevant here—alleged that Defendants failed to provide constitutionally adequate medical treatment for his Parkinson's disease, including necessary specialist care. (Doc. 1.) Shortly thereafter, Plaintiff saw a neurologist, Dr. Nirmala Aryal, who ordered a treatment plan to address Plaintiff's Parkinson's disease, neuropathy, and back and ankle pain. (Doc. 44 at 2.) According to Plaintiff, Defendants refused to provide the recommended treatment. In March 2019, Plaintiff filed a Motion for Preliminary Injunction seeking an order directing Defendants to follow the treatment plan as recommended by the neurologist and to provide an MRI. (*Id.*; Doc. 35.)

The medical evidence submitted in briefing on the Motion for Preliminary Injunction showed that in December 2018, Dr. Aryal ordered specific treatment, including the medication Gabapentin twice a day, an MRI of the spine, an x-ray of the right ankle, and a follow-up appointment in three months. (Doc. 44 at 4.) The medical records showed that "S. Stacy" denied the MRI on the ground that it was not medically necessary; however, there was no indication whether S. Stacy was a physician or specialist, and there was no evidence that she conducted any type of examination of Plaintiff or review of his medical history and records before overriding the treating specialist's order for an MRI. (*Id.* at 8–9.) There was no explanation in the records for the failure to perform the ankle x-ray as ordered by the specialist. (*Id.* at 9.) And there was no evidence that the three-month follow-up appointment ordered by the specialist was ever scheduled. (*Id.*) Because the medical records demonstrated that Defendants had refused to follow the advice of the treating neurologist and that Plaintiff had suffered and continued to suffer severe and worsening pain, the Court found that Plaintiff demonstrated a likelihood of success on the merits and a likelihood of irreparable injury absent an injunction. (*Id.* at 9–11.) *See Snow v. McDaniel*, 681 F.3d 978, 988 (9th Cir. 2012) (where the treating physician and specialist recommended surgery, a reasonable jury could conclude that it was medically unacceptable for the non-treating, non-

specialist physicians to deny recommendations for surgery), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014); *Jones v. Simek*, 193 F.3d 485, 490 (7th Cir. 1999) (the defendant physician's refusal to follow the advice of treating specialists could constitute deliberate indifference to serious medical needs). The Court further found that Plaintiff satisfied the remaining factors necessary to warrant an injunction, and it granted Plaintiff's Motion for Preliminary Injunction. (Doc. 44 at 11–13.)

In its May 1, 2019 Order granting Plaintiff's Motion, the Court ordered the following:

> (a) Defendants must promptly schedule Plaintiff to undergo a lumbar MRI as ordered by Dr. Aryal.
>
> (b) Defendants must promptly schedule Plaintiff to undergo a right ankle x-ray as ordered by Dr. Aryal.
>
> (c) Defendants must promptly schedule Plaintiff to see Dr. Aryal for a follow-up appointment.
>
> (d) Defendants must provide any treatment, procedures, testing, and/or medications recommended or prescribed by Dr. Aryal at the follow-up appointment.
>
> (e) Within 10 days from the date of this Order, Defendants must file a Notice with the Court indicating the week in which Plaintiff is scheduled to undergo an MRI and an x-ray and indicating the week in which he is scheduled to see Dr. Aryal.

(*Id.* at 13–14.)

Thereafter, from June to August 2019, Plaintiff filed four Motions alleging that Defendants had not provided the neurologist's recommended treatment and seeking specific medical treatment. (Docs. 56, 65, 78, 83.) Plaintiff also requested that the Court find Defendants in contempt for violation of the May 1, 2019 Order. (Doc. 65 at 3.)

Medical evidence submitted in briefing on Plaintiff's Motions showed that on June 10, 2019, Plaintiff saw Dr. Aryal for a follow-up appointment pursuant to the Court Order. (Doc. 88-1 at 2–5.) At this appointment, Dr. Aryal conducted a thorough exam,

assessed Parkinson's, idiopathic peripheral neuropathy, radiculopathy due to lumbar disc disorder, low back pain, and right ankle swelling. (*Id.*) As stated, the Court Order directed that Defendants provide any treatment, procedures and medications recommended by Dr. Aryal at this follow-up appointment. (Doc. 44 at 14.) Dr. Aryal issued the following treatment orders:

>   (1)   change administration of Gabapentin to two tablets after dinner;
>   (2)   stop Cymbalta;
>   (3)   refer Plaintiff to a neurosurgeon;
>   (4)   refer Plaintiff to a podiatrist;
>   (5)   provide Dr. Aryal an ankle x-ray report; and
>   (6)   return Plaintiff for follow-up appointment with Dr. Aryal in two months.

(Doc. 88-1 at 4–5.)

The medical evidence showed that despite these treatment orders issued on June 10, 2019, Defendants did not start to administer any Gabapentin until June 24, 2019; Defendants did not discontinue Cymbalta until July 30, 2019; the referral to a podiatrist was denied by "S. Stacy" on the basis that it was not medically necessary; and the two-month follow-up appointment with Dr. Aryal was not scheduled. (Doc. 95 at 8-9.)[2] Defendants provided no explanation for the failures and delays in providing the specialist-ordered treatment.

As to the denial of the podiatry referral, the Court noted that previously, the same "S. Stacy" overrode Dr. Aryal's order for an MRI on the basis that it was not medically necessary; however, there was no indication that this person was a physician—much less a specialist—and there was no evidence S. Stacy performed any type of examination of Plaintiff or review of his medical history before overriding the specialist's treatment order. (Doc. 95 at 8.) The Court found it troubling that Defendants now relied on the same vague determination by the same unknown S. Stacy to override the specialist's

---

[2] A referral was made to a neurosurgeon, whom Plaintiff finally saw on August 20, 2019. (Doc. 95 at 8.)

1 treatment order, "[a]gain, there is no evidence that S. Stacy examined Plaintiff or reviewed his medical history before overriding the specialist's recommended treatment and disregarding the Court's Order. Engaging in the very same action previously identified by the Court as giving rise to deliberate indifference supports a finding that the refusal to follow the specialist's treatment order was willful." (*Id.* at 8–9.)

In response to Plaintiff's Motions, on August 26, 2019, the Court issued an Order granting Plaintiff's request for further injunctive relief in part, and directed Defendants to schedule an appointment with Dr. Aryal within 10 days and to submit the medical records from Dr. Waldrip, the neurosurgeon whom Plaintiff saw on August 20, 2019. (*Id.* at 15–16.)

The August 26, 2019 Order included an Order to Show Cause, directing Defendants to show cause why the Court should not set a contempt hearing and sanction them for failure to comply with the Court's May 1, 2019 Preliminary Injunction Order. (*Id.* at 10, 15.) Defendants Corizon and Ryan have filed their Responses. (Docs. 100, 105.)

**II.     Governing Standard**

Under Federal Rule of Civil Procedure 70(e), the district court may hold a disobedient party in contempt. "This power may be used by a district court to impose compliance with its lawful orders." *S. Cal. Darts Assoc. v. S. Cal. Darts Assoc., Inc.*, No. CV 12-01899-RGK (JCGx), 2012 WL 12882764, at *1 (citing *Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("[t]here can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt")); *see Gifford v. Heckler*, 741 F.2d 263, 265 (9th Cir. 1984) ("[a] district court has the power to adjudge in civil contempt any person who willfully disobeys a specific and definite order of the court"). The Court has broad discretion in deciding whether to hold a party in contempt. *Hook v. Ariz. Dept. of Corr.*, 107 F.3d 1397, 1403 (9th Cir. 1997).

The movant has the initial burden to show "by clear and convincing evidence that the contemnors violated a specific and definite order of the court." *In re Bennett*, 298

- 5 -

F.3d 1059, 1069 (9th Cir. 2002) (citation and quotation omitted). Once the initial burden is satisfied, the "burden then shifts to the contemnors to demonstrate why they were unable to comply." *Id.* (citation and quotation omitted). Generally, a violation is found where a party fails "to take all reasonable steps within the party's power to comply" with a court order, and "[t]he contempt need not be willful." *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006) (citations and quotations omitted). Good faith action based on a reasonable interpretation of a court order is a defense to civil contempt. *Id.* "Substantial compliance" with a court order is also a defense to civil contempt, regardless of "a few technical violations," as long as every reasonable effort has been made to comply. *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993) (citations omitted). Finally, if the nonmovant can show that compliance was impossible, a court cannot proceed with a civil contempt action. *See United States v. Rylander*, 460 U.S. 752, 757 (1983).

Sanctions for civil contempt may be imposed to coerce compliance with a court order and/or to compensate the injured party for losses sustained. *Koninklijke Philips Elecs., N.V. v. KXD Tech., Inc.*, 539 F.3d 1039, 1044 (9th Cir. 2008); *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992) (citing *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947)). "Unlike the punitive nature of criminal sanctions, civil sanctions are wholly remedial." *Whittaker Corp.*, 953 F.2d at 517 (citation omitted).

**III. Discussion**

    **A.  Specific and Definite Order**

Federal Rule of Civil Procedure 65(d) requires that a restraining or injunction order "be 'specific in terms' and describe 'in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained.'" *Reno Air Racing Ass'n.*, 452 F.3d at 1132 (quoting Fed. R. Civ. P. 65(d)). "If an injunction does not clearly describe prohibited or required conduct, it is not enforceable by contempt." *Gates v. Shinn*, 98 F.3d 463, 468 (9th Cir. 1996). "[T]he fair notice requirement of Rule

65(d) must be applied in the light of the circumstances surrounding [the order's] entry." *Reno Air Racing Ass'n*, 452 F.3d at 1133 (internal quotations and citations omitted).

Plaintiff's request for a contempt finding relates to subsection (d) of the Court's May 1, 2019 Order, which ordered that after the follow-up appointment with Dr. Aryal, "Defendants must provide any treatment, procedures, testing, and/or medications recommended or prescribed by Dr. Aryal at the follow-up appointment." (*See* Doc. 65; Doc. 44 at 13.) In light of the circumstances surrounding entry of the Court's Order, this directive regarding future medical treatment as ordered by Dr. Aryal at the follow-up appointment was specific in terms, reasonably detailed, and clearly described the required conduct. In their Response, Defendants do not present any argument that this portion of the Order was not specific or definite or that they did not have fair notice of the required conduct. (*See* Docs. 100, 105.) Accordingly, the Order was specific and definite and is enforceable by contempt.

**B.     Noncompliance with Order**

In the August 26, 2019 Order to Show Cause, the Court determined from the medical evidence that Defendants failed to comply with the May 1, 2019 Order to "provide any treatment, procedures, testing, and/or medications recommended or prescribed by Dr. Aryal at the follow-up appointment." (Doc. 95 at 7–10; *see* Doc. 44 at 13.) Specifically, the Court found that Defendants (1) failed to timely administer Gabapentin; (2) failed to timely discontinue Cymbalta; (3) failed to send Plaintiff to a podiatrist; and (4) failed to schedule the two-month follow-up appointment with Dr. Aryal. (Doc. 95 at 7–10.)

In their Responses to the Order to Show Cause, Defendants do not challenge the first three findings. (Docs. 100, 105.) But Defendant Ryan challenges the fourth finding and asserts that the two-month follow-up appointment with Dr. Aryal was made, although it was slightly delayed. (Doc. 100 at 4.) To support that an appointment with Dr. Aryal was scheduled, Ryan submits the declaration of Dr. Wendy Orm, the Medical Director for Centurion, which took over the healthcare contract from Corizon on July 1, 2019. (*Id.*,

Ex. 1, Orm Decl. ¶¶ 2, 5.) Orm does not claim or demonstrate any personal knowledge of Plaintiff's medical treatment or appointment scheduling; rather, she avers that she reviewed Plaintiff's medical records. (*Id.* ¶ 4.) Orm states that Dr. Aryal's "neurology notes from June 10, 2019 were apparently reviewed by a Corizon provider on June 14, 2019, and all recommendations were noted and it was indicated that a 'tickler' was placed to later schedule the two month follow-up." (*Id.* ¶ 15.) There are no records attached to Orm's declaration, and she does not cite to any evidence in the record to support her statement that a "tickler" was placed in the record to schedule the two-month follow-up appointment. (*See id.*) Orm goes on to state that on July 22, 2019, the neurology follow-up appointment was requested by a provider. (*Id.* ¶ 16.) Again, there is no citation to where in the record this request can be found. (*Id.*) Orm states that on July 23, 2019, this request was sent to Centurion's Utilization Management for review; on August 16, the request was marked as medically necessary; on August 22, the request was authorized; and, on August 26, a follow-up appointment with Dr. Aryal was scheduled for September 5, 2019. (*Id.* ¶¶ 18-19.) There is no citation to record evidence documenting any of these actions.

On its own review of the docket, the Court finds that in Ryan's Notice of Compliance with the Court's August 26, 2019 Order—specifically, in response to the order to schedule an appointment with Dr. Aryal to occur within 10 days—Defendants proffered a copy of a "Consultation Request Action" form showing that on July 22, 2019, NP DeMello submitted a consult request for an off-site neurology appointment, and on August 26, 2019, the appointment was scheduled for September 5, 2019. (Doc. 97 at 5.) This demonstrates that the follow-up appointment was not scheduled in the two-month timeframe ordered by Dr. Aryal and, therefore, it was not in compliance with the Court Order to follow all of Dr. Aryal's treatment orders.

Based on the above, Defendants failed to comply with the May 1, 2019 Order to "provide any treatment, procedures, testing, and/or medications recommended or prescribed by Dr. Aryal at the follow-up appointment." (Doc. 44 at 13.)

### C. Efforts to Comply

Defendants contend that NP DeMello, who treated Plaintiff at the relevant time, implemented, or attempted to implement, every written order of Dr. Aryal; thus, there was substantial compliance with the May 1, 2019 Preliminary Injunction Order. (Doc. 105 at 5–6.) To show their efforts to comply with the May 1, 2019 Order, Defendants submit the declarations of NP DeMello as well as Dr. Ayodeji Ladele, the Deputy Medical Director. (*Id.*, Ex. A, DeMello Decl. ¶¶ 3–4 & Ex. F, Ladele Decl. ¶ 3.) Dr. Ladele avers that he was aware of the May 1, 2019 Order and he was involved, as a supervisor, in ensuring that Plaintiff timely received the ordered medical care. (*Id.*, Ex. F, Ladele Decl. ¶ 6.)

#### 1. Administration of Gabapentin

With respect to Dr. Aryal's June 10, 2019 order that Plaintiff be administered two tablets of Gabapentin after dinner, NP DeMello avers that Dr. Aryal's dictated notes were received on Tuesday, June 11, 2019; however, Fridays are her designated time to review outside records and conduct chart reviews, so she did not review Dr. Aryal's notes until June 14, 2019. (Doc. 105, Ex. A, DeMello Decl. ¶ 7 (Doc. 105 at 10).) There is no evidence that Corizon took any steps to expedite the review of Dr. Aryal's treatment orders despite the Court Order to provide the recommended treatment and medication.

NP DeMello avers that even though Dr. Aryal prescribed Gabapentin, DeMello wanted to meet with Plaintiff before she added the medication because Plaintiff previously had concerns over this medication. (*Id.* ¶ 8.) But Plaintiff had made clear his desire to take the Gabapentin as prescribed by Dr. Aryal via "urgent" Health Needs Request (HNR) forms he filed on June 14 and 17, 2019, in which he complained of worsening pain and expressly asked for the Gabapentin that had been ordered by the neurologist. (Doc. 56 at 19–20.) Thus, even though Dr. Aryal's June 10, 2019 treatment orders prescribed Gabapentin, and Plaintiff filed "urgent" HNRs thereafter seeking the medication as ordered, DeMello did not schedule an appointment to see Plaintiff until June 19, 2019. (Doc. 105, Ex. A, DeMello Decl. ¶¶ 8–9.) There is no evidence that

Corizon acted with any urgency or took any steps to promptly schedule Plaintiff despite the Court Order.

On June 19, 2019, after meeting with Plaintiff, NP DeMello submitted the prescription order for Gabapentin; however, she avers that she does not know why Plaintiff did not start to receive the Gabapentin until June 25, 2019, and she surmises that the delay was probably because the prescription order likely had to go through Corizon utilization management review. (*Id.* ¶ 11.) But Defendants do not submit any record or documentation of the Corizon utilization management review and approval for the Gabapentin, and, instead, submit a copy of the policy governing non-formulary drug requests, which includes a provision stating that "if a non-formulary medication is an urgent request the process must be expedited and obtained by offsite backup pharmacy until the non-formulary is approved or denied." (Doc. 105, Ex. B (Health Services Technical Manual, Ch. 4) (Doc. 105 at 14).) NP DeMello did not submit the Gabapentin request as urgent; rather, she indicated that the delivery timeframe for the request was "routine." (Doc. 62 at 38.) And there is no evidence that Corizon treated the Gabapentin medication request as an urgent request despite the Court Order to provide the medication, further evidencing that Corizon did not take any steps within its power to ensure prompt administration of the ordered medication.

Notably, NP DeMello does not indicate whether she was aware of the May 1, 2019 Order for medical treatment. (*See* Doc. 105, Ex. A, DeMello Decl.) Dr. Ladele avers that some Corizon employees are generally not informed of such Orders. (*Id.*, Ex. E, Ladele Decl. ¶ 7.) Individual employees' lack of knowledge of the Order cannot excuse a failure to comply because knowledge of the May 1, 2019 Preliminary Injunction Order was imputed to Corizon through its counsel. *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 634 (1962) ("each party is . . . considered to have notice of all facts, notice of which can be charged upon the attorney"); *In re Kensington Intern. Ltd.*, 368 F.3d 289, 315 (3d. Cir. 2004) ("the attorney and client have an agency relationship and therefore any facts known by the attorney may generally be imputed to the client"); Restatement (Second) of

Agency § 9(3) (1958) ("[a] person has notice of a fact if his agent has knowledge of the fact . . . ").

In short, although the delay in administering the Gabapentin medication was not extensive, there is no evidence Defendants made any effort to timely comply with this portion of Dr. Aryal's treatment order, which lends support to the conclusion below that Defendants did not substantially comply with the Court Order.

### 2. Discontinuation of Cymbalta

Defendants explain that the failure to timely discontinue Cymbalta was simply a mistake. (Doc. 105 at 6.) In her declaration, NP DeMello states that she "believed [she] had discontinued the Cymbalta prescription" on June 19, 2019, but later did a chart review and noticed that the order was still active, so she discontinued it on July 30, 2019. (*Id.* ¶ 10; Doc. 88-2 at 23.) There is no explanation why Corizon or Dr. Ladele, who avers that he was involved in ensuring that Dr. Aryal's medical orders were timely carried out, did not take any steps when the order to discontinue medication was not followed.

On July 3, 2019, Plaintiff filed a Motion for Urgent Medical Care in which he notified the Court—as well as Defendants and defense counsel—that, contrary to Dr. Aryal's order, he was still being made to take Cymbalta via a forced watch-swallow protocol. (Doc. 65 at 2.) Despite this notice to Defendants, Plaintiff was forced to take Cymbalta for almost another month, until July 30, 2019. (*Id.*; Doc. 88-2 at 23.) There is no explanation why Corizon did not take any steps in response to this Motion to timely rectify the mistake.

On this record, Defendants made no effort to timely comply with Dr. Aryal's order to discontinue the Cymbalta medication.

### 3. Podiatry Referral

As to the failure to comply with the order to refer Plaintiff to a podiatrist, Defendants present two somewhat contradictory explanations.

First, Defendants attempt to justify "S. Stacy's" denial of the podiatry consult by submitting documentation to show that Stacy is in fact a medical doctor and suggesting

1  that Dr. Stacy reviewed ankle x-rays and neurology records before overriding the treating
2  specialist's order, thereby rendering S. Stacy's decision medically appropriate. (Doc. 105
3  at 7 n.3 & Ex. E.)

4  Defendants' attempt to justify their failure to follow the Court Order to comply
5  with Dr. Aryal's recommendation for a podiatry referral is futile because "[p]ersons
6  subject to an injunctive order issued by a court with jurisdiction are expected to obey that
7  decree until it is modified or reversed, even if they have proper grounds to object to the
8  order.'" *Armstrong v. Brown*, 857 F. Supp. 2d 919, 948 (N.D. Cal. 2012) (quoting *GTE
9  Sylvania v. Consumers Union of the U.S.*, 445 U.S. 375, 386 (1980)).

10  Defendants' attempt to justify their conduct otherwise fails. They submit a printout
11  from the Arizona Medical Board identifying Dr. Sylvie Rose Stacy as a medical doctor;
12  however, Defendants do not claim, and there is no evidence, that she is a specialist. (*Id.*,
13  Ex. E.) There is also no claim or evidence that Dr. Stacy ever examined Plaintiff before
14  overriding the specialist's order. Further, although the medical records indicate that ankle
15  x-rays and neurology records existed and would have been available at the time Dr. Stacy
16  denied the podiatry referral, Defendants do not expressly claim that Dr. Stacy reviewed
17  them, and there is no evidence that she reviewed them. (*See* Doc. 105 at 4, 7 n.3.) For
18  example, there is no declaration from Dr. Stacy nor any note in the medical records
19  indicating that she conducted a review of the x-rays results or neurology records or relied
20  on those records or any finding within them. Rather, the evidence shows that Defendants
21  denied Dr. Aryal's order for a podiatry referral based on a non-treating non-specialist's
22  cursory determination. As mentioned, the Court's prior Order identified this exact
23  conduct as giving rise to deliberate indifference and supporting the grant of injunctive
24  relief. The record shows that Defendants ignored the Court Order and continued the very
25  same deliberately indifferent conduct.

26  Alternatively, Defendants assert that the podiatry consult would have been
27  approved but for the timing of the changeover from Corizon to Centurion. (Doc. 105 at
28  6.) To the extent Defendants contend that these circumstances rendered it impossible to

Case 2:18-cv-01828-JJT-DMF   Document 126   Filed 11/21/19   Page 13 of 15

1 comply with the Court Order, they must show "categorically and in detail" why they
2 were unable to comply. *N.L.R. B. v. Trans Ocean Export Packing, Inc.*, 473 F.2d 612,
3 616 (9th Cir. 1973). The inability to comply with an order is not a defense to civil
4 contempt if the inability to comply is self-induced. *See F.T.C. v. Affordable Media*, 179
5 F.3d 1228, 1239–40 (9th Cir. 1999) (suggesting that the inability to comply would not be
6 a defense to a contempt finding where it was apparent that the defendant's inability to
7 comply with the district court's order was the intended result of their own conduct).

8 The records show that, on June 10, 2019, Dr. Aryal ordered the podiatry referral
9 and, on June 14, 2019, NP DeMello entered the podiatry consult request. (Doc. 88-1 at 4:
10 Doc. 88-2 at 60–61.) Dr. Ladele avers that counsel informs him of Court orders related to
11 medical care, and that when there was a referral based on court-ordered medical care, if
12 the referral was not approved, he would then get involved to overturn the decision and
13 push the referral through. (*Id.*, Ex. F, Ladele Decl. ¶¶ 6, 8.) Dr. Stacy denied the podiatry
14 consult referral on June 26, 2019, and her decision—which became the utilization
15 management decision—to deny the consult was "returned" on June 27, 2019, which was
16 a Thursday. (Doc. 105, Ex. F, Ladele Decl. ¶ 9 & Ex. D.) Dr. Ladele states that because
17 the decision denying the podiatry referral was not returned until June 27, 2019, and the
18 ADC computers were changed over to Centurion's systems that next weekend, he did not
19 learn of the denial decision with adequate time to address it. (*Id.* ¶¶ 9–10.) According to
20 Dr. Ladele, he would have approved the podiatry consult in accordance with Dr. Aryal's
21 recommendation and the Court Order but for the timing of the Corizon utilization
22 management decision. (*Id.* ¶ 10.)

23 Dr. Ladele's good intentions fall far short of showing categorically that Corizon
24 was unable to comply with the order for a podiatry consult. The fact that Dr. Stacy or
25 members of the utilization management team may not have been personally informed of
26 the Court Order and therefore could not comply with it does not excuse noncompliance
27 because that was the result of Corizon's own conduct. Also, as stated, Corizon was
28 imputed with knowledge of the May 1, 2019 Court Order. *See Link*, 370 U.S. at 634. In

this instance, there is no showing that compliance with the order for a podiatry consult was impossible, and there is no evidence that Defendants took any reasonable effort to comply with the order for a podiatry referral.

### 4.     Two Month Follow-Up Appointment with Dr. Aryal

On June 10, 2019, Dr. Aryal ordered that she see Plaintiff for a follow-up appointment in two months—that is, on or around August 10, 2019. (Doc. 88-1 at 4–5.) As discussed above, NP DeMello submitted a request for the follow-up appointment with Dr. Aryal on July 22, 2019; however, medical staff waited until August 26, 2019, to schedule the appointment, setting it for September 5, 2019. (Doc. 97 at 5.) Despite Dr. Aryal's explicit order for follow up in two months, the record shows that the July 22, 2019 neurology consult request was submitted as "routine" with no indication that it was time specific. (*Id.*) There is no explanation why the request was not entered as "urgent" or time sensitive, nor is there any explanation why neither Corizon nor Ryan took any steps to ensure that this ordered follow-up appointment was timely scheduled. Consequently, there is no showing that Defendants took any steps or made any effort to comply with the order to return Plaintiff to see Dr. Aryal two months from the June 10, 2019 appointment.

Based on the above, Defendants did not substantially comply with that part of the May 1, 2019 Order that specifically directed Defendants to provide "any treatment, procedures, testing, and/or medications recommended or prescribed by Dr. Aryal at the follow-up appointment." (Doc. 44 at 13.) The other directives in the May 1, 2019 Order—that Defendants provide certain medical tests and bring Plaintiff to see Dr. Aryal—were rendered meaningless when Defendants did not thereafter provide Dr. Aryal's recommended treatment. Consequently, the failure to substantially comply with this part of the Order constitutes a failure to substantially comply with the Order overall.[3]

---

[3] Defendants' failure to substantially comply with the May 1, 2019 Order raises serious questions as to what, if any, measures defense counsel took to ensure that its client complied with the Court Order.

Case 2:18-cv-01828-JJT-DMF   Document 126   Filed 11/21/19   Page 15 of 15

The Court will therefore set a show cause hearing to allow Defendants the opportunity to show cause why they should not be found in contempt and be sanctioned.

**IT IS ORDERED:**

(1) A show cause hearing is set for **December 10, 2019**, at **1:30 PM** before the Honorable Judge John J. Tuchi, United States District Court, in Courtroom 505 of the Sandra Day O'Connor U.S. Federal Courthouse, 401 W. Washington St., Phoenix, Arizona 85003.

(2) Defense counsel must appear in person at the hearing.

(3) Plaintiff may appear telephonically by calling chambers at **602-322-7660** ten minutes before the start of the hearing.

Dated this 21st day of November, 2019.

Honorable John J. Tuchi
United States District Judge